## John Mohr et al. v. Henry McKenzie.

1. APPEALS—*Effect of a Reversal as to Parties not Appealing.*— Where two of three parties appeal from a judgment, if the judgment is reversed as to those appealing, it will operate as a reversal as to the party not appealing.

2. NEGLIGENCE—*Questions Between Contractor and Sub-contractor.*— In an action brought by an employe of a sub-contractor against the contractor for negligence of the sub-contractor resulting in personal injuries the question as to whether the relation existing between such contractors is that of master and servant so as to invoke an application of the rule *respondeat superior*, is to be determined mainly by ascertaining from the contract whether the contractor retained the power of directing and controlling the work or gave it to the sub-contractor. If such power is given to the sub-contractor he alone is responsible.

3. CONTRACTS—*When Construed by the Parties.*—When the parties to a contract place their own construction upon it and proceed to execute it in accordance with that construction, courts will not adopt a different construction simply to gratify a fondness for technicalities.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. GEORGE F. BLANKE, Judge, presiding. Heard in this court at the October term, 1895. Reversed and remanded. Opinion filed December 2, 1895.

HOYNE, FOLLANSBEE & O'CONNOR, attorneys for appellants.

KING & GROSS, attorneys for appellee; ANDREW J. HIRSCHL, of counsel.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The appellants were boiler makers, and had taken a contract to furnish a new boiler to E. Rothschild & Bros., merchants in Chicago, at their place of business. The proposal of appellants to do the work, contained, in addition to the specifications for the boiler, the following:

"We will also put in new foundation for boiler and do all the necessary masonry for the same in a first-class manner.

For above boiler, full fire front, all necessary brick work

and balance of trimmings, all as specified herein, new boiler delivered and set up and old boiler also removed, all for the sum of," etc.

The Messrs. Rothschild gave to appellants a written acceptance of their proposal, and added to said acceptance the following:

" This includes taking out and removing old boiler, putting new one in its place, all brick work, excavating. and removing dirt—said boiler to be complete and ready for steam connections."

Pending the negotiations between appellants and the Messrs. Rothschild, the firm Dignam & Crear, mason contractors, made a written proposition to appellants, as follows:

" CHICAGO, Oct. 5, 1891.

John Mohr & Son, 32 Illinois St.

DEAR SIRS: I propose to furnish the necessary masonry for setting one boiler, 66 in. dia. x 15 ft. long, under the following conditions, for the sum of three hundred and fifty dollars ($350), boiler to be blocked up by you in position for mason work:

Foundation to be of rubble stone, laid in Portland cement.

Furnace back to and including bridge wall, to be lined with Anglo-Saxon fire brick and back of bridge wall with second quality fire brick. Headers will be laid in every fifth course. No. 1 fire-clay only will be used. Joints 1–16 in. Walls will be plank, — in. in thickness, with 2 in. air spaces.

The work to be done in accordance with plans and specifications in a thorough manner.

N. B. Alley to be taken up and replaced. Work to be done at Rothschild's, Monroe street.

Respectfully submitted,

DIGNAM & CREAR.

After Rothschild & Bros. had accepted Mohr & Son's proposition, Mohr & Son verbally accepted Dignam & Crear's proposition, and on the 23d day of November, 1891, Dignam & Crear entered upon their part of the work.

The appellee was a laborer in the employ of Dignam &

Crear, and was put at work on the job by his employers. He was thirty-nine years of age, and his wages, when he worked, were two dollars a day.

The new boiler was to be placed in the location of the old one, which appears to have extended from the boiler room into or under the alley in the rear of the building, and hence it was necessary to excavate the alley above the boiler in order that the old boiler might be lifted out, and the new one put in. There was an elevator shaft close to the boiler room, and separated from it by two brick walls, one being twenty-seven inches thick, through which there was an old doorway, and the other a fire wall sixteen inches thick, that encased the boiler, and blocked up the old doorway. In the work of tearing down the sixteen inch wall which encased the boiler, mortar and brick had fallen into the elevator shaft through the old doorway that opened into it. Appellee testified that he was ordered by Crear to go into the elevator shaft and remove this rubbish, and perhaps, also, a course or two that remained of the brick wall. When he had worked there some fifteen or twenty minutes the elevator descended upon him, and so crushed him that he lost one of his legs by amputation.

Appellee testified that he went into the shaft because Mr. Crear ordered him to do so, and told him he would watch out for the elevator, so it should not come down on him. He also testified that while he was in the shaft he saw the elevator moving up and down in the building a few floors at a time, but that he depended on Mr. Crear to notify him if the elevator came below the floor above the basement where he was. Suit was brought by the appellee against the two appellants, and William Crear, and judgment was recovered against the three for $9,000, upon the verdict of a jury for that amount. The appellants John and Joseph Mohr alone appeal. The judgment against these appellants should not be allowed to stand, and it follows that if it must be reversed as to them, it will operate to reverse the judgment as to Crear also. Alling v. Wenzel, 35 Ill. App. 246; same case, 132 Ill. 264; laflin v. Dunne, 129 Ill. 241.

The appellee was not in appellants' employ. They had no control over him. The work upon which he was engaged was the work of the sub-contractors, Dignam & Crear, over whom the appellants had no control as to the manner of doing it, and there is no evidence that they attempted in any way to give directions concerning its method of performance, and at the time of the accident the appellants were not engaged upon any part of the job.

The evidence satisfactorily shows that Dignam & Crear were skilled and competent contractors for the job they had undertaken, and that they were at liberty under their contract to do the work in their own way, and that appellants in no way attempted to interfere with them in so doing. It is not the case of work being done under the direction of the owner or principal contractor, but it is the case of work being done by competent persons under a contract under which the manner of doing the work was left entirely to themselves. Neither is it a case wherein the relation of master and servant exists, so that the rule of *respondeat superior* may be invoked.

The doctrine applicable to cases of this kind may be found in Scammon v. City of Chicago, 25 Ill. 424; Pfau v. Williamson, 63 Ill. 16; Andrews v. Boedecker, 17 Ill. App. 213.

It was not necessary under the doctrine of those cases, or of any other cases with which we are familiar, that in doing work of repairs of this character, the sub-contractors should have been let into the exclusive possession of the entire premises to which the repairs or additions were being made, in order to relieve the contractors from liability to the servants of the former for injuries sustained.

It is sufficient that the sub-contractors doing the work should be let into possession of enough of the premises to enable them to do their work without hindrance or interference by the original contractor, and that he was in fact not interfering.

Whether a critical construction of the contract entered into by Crear & Dignam with the appellants, required the former to do the particular part of the job upon which appellee had been set to work, need not be inquired into.

The work was being done under the contract as the parties understood it. Crear testified in response to questions put to him by the court: "Removing the rubbish, as I understand it, and always did understand it, was part of the contract, but not written; * * * I considered the removing of the brick and the rubbish a part of the contract."

And again he testified: "I was not superintending the work for John Mohr & Son (appellants); I was superintending it for myself, to carry it out according to contract under the contract introduced in evidence. I was there in behalf of my own firm to see that we performed this work under the contract."

Then in answer to a question put to him by counsel as follows:

"There is nothing in this proposal as to the removing of the brick work, is there?" He answered: "I didn't read it, sir. I know that was understood; that might be verbal; I know that it was understood that it would be removed."

One of the Mohrs testified to substantially the same effect, that the work then being done by appellee was a part of the work for which Dignam & Crear had contracted.

Where parties place their own construction upon their contract, and proceed to do work in accordance with that construction, upon which they are all agreed, courts will not make a different construction of the contract simply to gratify a fondness for technicalities.

But rejecting all that was testified to by either Crear or Mohr, as quoted, the only theory upon which a recovery against appellants could be claimed, would be by inferring that because the work that appellee was doing was not embraced within the terms of the contract of Dignam & Crear, but was included within the terms of appellants' contract with the Rothschilds, therefore Crear was the superintendent and servant of appellants in the doing of it, which is an inference not supported by the evidence.

The case having to be reversed upon the grounds indicated, it becomes unnecessary to consider any of the other assigned errors.

Reversed and remanded.