PAGAN *v.* QUIÑONES ET AL.

APPEAL from the District Court of Mayagüez.

No. 144.—Decided December 16, 1907.

APPEAL—CONFLICTING EVIDENCE—FINDINGS OF THE TRIAL COURT.—Where the evidence is conflicting, the findings of the trial court thereon must be accepted by the appellate court, especially where it appears that such findings are justified by a preponderance of the evidence taken at the trial.

ID.—EFFECT OF JUDGMENT IN A CASE WHERE THERE ARE SEVERAL DEFENDANTS AND ONLY ONE APPEALS—INDIVISIBILITY OF THE MATTER IN LITIGATION.—Where a judgment is rendered by a municipal court against various defendants, and an appeal therefrom is taken by only one of them, the court must proceed to try the case *de novo*; and if the subject matter in litigation is in its nature indivisible, the court must consider and determine the question involved as a whole and its judgment will also affect the defendants not appealing.

The facts are stated in the opinion.

*Mr. Ramírez* for appellant.

*Mr. Texidor* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This case originated in the Municipal Court of San Germán on the 5th of February, 1906.

It was a claim for damages amounting to $450 for seizing the cane grown on two and a half acres of land claimed by

plaintiff Pagán, as rented from Juan Cancio Ortiz, situated in Lajas. The cane was cut and sold to the Guánica Central by virtue of an attachment sued out by Enrique Quiñones against his mother, Josefa Quiñones, her brother Carlos Pagán and Vivente Zapata. All the above-named parties are made defendants in the case.

All defendants were cited and answered, the defendant, Enrique Quiñones, by one attorney, and the other three defendants by another. All presented exceptions or demurrers which were overruled by the municipal court.

All parties appealed from the order overruling the demurrer. Enrique Quiñones alone answered the complaint in the municipal court, filing a general denial.

The three other defendants, Josefa Quiñones, Carlos Pagán and Vicente Zapata, failing to answer were declared in default.

On the day of the trial, the 15th of April, 1907, only the plaintiff, Macario Pagán, and the defendant, Enrique Quiñones, appeared. One judgment was rendered against the defendants jointly and severally for $450, the amount claimed.

Against this judgment Enrique Quiñones alone appealed to the District Court of Mayagüez. The other parties took no action in the matter.

The District Court of Mayagüez set the case down for a day certain to be heard on demurrer.

The plaintiff and the defendant, Enrique Quiñones, appeared, but the other three defendants, Josefa Quiñones, Carlos Pagán and Vicente Zapata, did not appear and were not represented at all in the district court.

The exceptions were overruled by the district court just as they had been by the municipal court.

A day was then set for the trial of the case on its merits. The plaintiff and the defendant, Enrique Quiñones, again appeared, the other three failing to appear.

The plaintiff then presented on the trial his proof, which proof, which is substantially as follows:

"Juan Cancio Ortíz, 50 years old, agriculturist and merchant, a resident of Lajas, testified that he is acquainted with Macario Pagán, whom he knows to own two and a half *cuerdas* of cane in the ward of Palmarejo, because the witness leases the land from him; that he was deprived of the possesion of the said land, the same having been attached by Enrique Quiñones; that the value of the said two and a half *cuerdas* of cane may be calculated, including the ratoons, at $100 per *cuerda* for each crop; that the said estimate cannot be calculated as either net or gross; that the expenses of cultivation may be calculated at $120, or $120 including everything; that the ratoons require less expenses and should produce the same; that the two crops ought to produce $500—between $400 and $500; that the land on which the cane is planted belongs to witness by virtue of a contract of purchase with agreement to resell to the vendor Silvestre Pagán; that no new contract has since been entered into annulling the former contract; that he is the owner and in possession of the land, having bought the same from Pepe Acosta; that the land belonged to one Delgado before it belonged to the said Pepe Acosta; that the purchase made from Silvestre Pagán was recorded in the registry of property after the expiration of the contract and no payment made thereon; that the said contract was dated San Germán, April, 1902.

"The witness Delfín Lugo, who lives in the ward of París, of the municipal jurisdiction of Lajas, testified that he knew Macario Pagán; that he knows that the said Pagán owns in that ward some cane; that he formerly knew the *finca* on which the said cane is planted, as belonging to the said Silvestre Pagán, but he also knew that a transaction with Juan Cancio Ortíz had taken place; that he had seen him planting cane and that he told him that he was going to plant two or three *cuerdas;* that when this cane was ready to cut he learned that Carlos Quiñones was cutting it as administrator by virtue of an attachment levied upon the same in a suit brought by Enrique Quiñones against Josefa Quiñones, the mother of Carlos; that when the attachment was levied upon the cane Macario Pagán said to the witness: 'They have attached my cane; let us go and look at it in order that you may tell me what it will produce'; that they went and inspected the cane and the witness told him that it ought to produce at least $400 or $500; that he knows that the said cane was cut and taken to

the Guánica Central for grinding; that he understands it was attached by Don José Martir; that he has recently passed the house of Macario Pagán and has seen that the ratoons remaining have been entirely cut; that Macario Pagán not only lost the cane that there was, but also the ratoons by virtue of the attachment; that he does not know whether the ratoons were attached or not; that he knew Silvestre Pagán, who was in possession of the property when he died; that he cannot state when he died. The witness further testified that he is an agriculturist; that he has not a very profound knowledge of the science of agriculture, but that he has sufficient knowledge of that subject to enable him to estimate the value of three or four acres of cane.

"The witness Enrique Schroder, 28 years of age, married, a resident of Palmarejo, jurisdiction of Lajas, testified that he knows Macario Pagán, knows that he owns a cane plantation on some *finca;* that he knows the cane was there but does not know whether it was in his name, or some one else's, as there was an attachment or something of the sort levied on the cane planted by Pagán; that he has seen the cane planted by Pagán on that land, and has seen the *peons* working there with him; that he has not made any estimate of the value of that cane; that he is an agriculturist, but cannot state the value of two and a half *cuerdas* of cane because some lands require more expenses than others; that when he saw the cane it was not ready to cut, and that on a *cuerda* of cane $50 to $70 may be expended; that he does not know whether that cane has been cut or not.

"The witness Juan Rodríguez, 30 years of age, agriculturist, resident of the ward of Llanos, municipal jurisdiction of Lajas, testified that he is acquainted with Macario Pagán, and has known him a long time; that he knows that Macario Pagán has some cane planted in the ward of Lajas, about two *cuerdas* and a half, and that he knows this because he worked there; that he knows that Pagán was deprived of that crop because the marshal of Cabo Rojo attached it; that the cane was cut by Carlos Pagán and ground at Guánica Central; that he saw the cane about the time it was ready to cut, and in view of the result obtained from other cane of this same crop, calculates that it ought to produce from $400 to $500; that he does not know whether Pagán has made use of the ratoons or not; that he was acquainted with Silvestre Pagán who died in that house; that he does not know whether the said Pagán ever left that land and house or not; that he always saw him there where he died; that he lived there himself two or three years and always saw Silvestre Pagán there until he died."

The defendant, Enrique Quiñones, then presented his proof, which is substantially as follows:

"The witness, Juan Cancio Ortíz, testified that the taxes on the land up to the 30th of January, 1904, when Silvestre Pagán died, were paid by the witness.

"The witness, Vicente Zapata, testified that that cane belonged to Don Silvestre or to the succession because Don Silvestre made a contract of return sale to Don Juan Cancio Ortíz for six *cuerdas* of land, but then he made another for two years more; later another tract of land composed of three and a half *cuerdas* and a house to pay for that return sale in payment of that mortgage, which land given as payment for the return sale has a house on it where the witness lives and did so live in the same when Silvestre Pagán sold it to Juan Cancio Ortíz; that when the delivery was made Don Juan stated to the witness that he had taken the property for the $200; that the mortgage was for two years and the payment was made a year previous, for which reason there was a balance due Silvestre on that property and it was then agreed that the witness should vacate the house later on, and then Don Silvestre planted cane and Don Gregorio furnished him with several articles from his store and Don Silvestre paid with an ox; that later Simplicio Arroyo furnished some goods and Don Silvestre paid him with an ox and a colt, for which reasons the cane belonged to Don Silvestre Pagán. In reply to questions asked by the judge the witness stated that he understood that an agreement to make a return sale was the same as a mortgage; that he does not know what a mortgage is; that the six acres of land and the house in which the witness lived belonged to Don Silvestre by reason of a purchase made from José Manuel Acosto; that Don Silvestre sold that land to Don Juan Cancio, witness knowing this to be a fact.

"The witness, Carlos Pagán, testified that he knows it to be a fact that the cane planted on that land belonged to Don Silvestre because it was planted with his money and, moreover, the land belonged in the past (if it does not in actuality belong) to his father; that his father had a contract of return sale with Juan Cancio Ortíz, and that one year prior to the termination of the contract he called Acosta, who had another *finca* that he had sold him some time previously and had not delivered the deed, and told him that instead of delivering the deed to him to make it to Juan Cancio Ortíz in order to pay him according to the agreement; they then agreed to accept Acosta's deed and he agreed to make the deed to the father of the witness or to cancel the agreement to make the return sale as soon as witness's father

should require it, but that about this time witness's father died, and during that time afterwards the cane was planted and, for this reason, witness says the cane belonged to Silvestre Pagán; that, moreover, the money employed to plant that cane belonged to witness's father; that Macario Pagán was a son of Don Macario Pagán; that he knows that the cane was the property of Silvestre Pagán, because the money employed to plant the same was his father's.

"The witness, Ramón Mercado, testified that Silvestre had spoken to him in order that he might cut some seed for him, which service he rendered, and Silvestre paid therefor with a colt; that the seeds were cut for the purpose of planting six *cuerdas* of land which Don Silvestre had, those six *cuerdas* being the same ones involved in this litigation.

"The witness, Simplicio Arroyo, testified that in 1903 Don Silvestre came to his store and asked him to furnish provisions for some *peons* who were working for him in the cane field; that witness agreed to furnish him for one month with provisions, which he did; on the termination of that time he went to Silvestre's house and he gave him in payment an ox, which ox was to pay $22 for the provisions and the other $22 witness was to pay in cash in order that Silvestre might pay the workmen whom he had employed; that he is sure that in the years 1902 and 1903 he was a merchant and had his business in the ward of Lajas; that he paid taxes for 1903."

At this juncture plaintiff presented a certificate issued by the Alcalde of Lajas to impeach the veracity of the witness, the certificate showing that the witness had no store during the years of 1902 to 1904. The witness testified that Don Juan Pujals was the owner of the store and that the witness had $20 invested in the store and Pujals $10, and that witness was the managing partner.

On the 19th of April the District Court of Mayagüez rendered judgment in favor of the defendants—all of them; that plaintiff take nothing by his suit and that defendants be freed from all responsibility in respect to the complaint and recover their costs. The court also delivered an opinion which reads literally as follows:

"The action exercised in this suit is a personal action for the collection of money and the complaint prays that after due legal pro-

ceedings the court render judgment declaring the law and the facts to be in favor of the plaintiff Macario Pagán and against the defendants, and therefore that the said defendants jointly and severally satisfy and pay to Macario Pagán the sum of $450, the value of the cane cut and sold to the Guánica Central and for the ratoons to come, adjudging them further to pay all costs and expenses incurred by reason of this suit.

"The fundamental allegation in the complaint, the basis for the suit is the following: Macario Pagán planted with his own money, and with the consent of Don Cancio Ortíz 2½ *cuerdas* of sugar-cane on a *finca* belonging to said Ortíz, composed of 6 *cuerdas* of land, equivalent to 2 hectares, 35 ares and 82 centares, on which property is situated a dwelling house built of lumber and thatched, situated in the ward of Los Llanos, municipal jurisdiction of Lajas, bounded on the east by lands belonging to Ernesto Forestier Ruiz; on the north by the public road leading from Guánica to Boquerón; on the west and south by lands belonging to Don José Martí Rivera. The complaint does not appear to be sworn to, and the only defendant who appeared at the hearing, Enrique Quiñones, through his counsel, Don Benito Forés, answered the complaint denying substantially all of the facts opposed to those admitted in the answer.

"The court is of opinion that after hearing all of the evidence presented at the hearing, which has been duly considered, and the allegations made by counsel for the litigating parties, the principal allegation has in no wise been proven; that is to say, the allegation set forth in the body of the complaint that the two and half *cuerdas* of cane were planted by Macario Pagán with his own money; neither has it been shown that the said cane belonged exclusively to him. The court, moreover, believes that the preponderance of the evidence in this case is in favor of the defendants, and therefore declares the complaint not well founded and orders and decrees that the said plaintiff shall take nothing by his suit and recover nothing from the defendants and that said defendants be freed from all responsibility under the suit brought, with the costs against the plaintiff; and let to the marshal be issued a writ for the execution of this judgment. Mayagüez, Porto Rico, 19th of April, 1907. (Signed) Isidoro Soto Nussa, Judge."

The counsel for the appellant in his brief sets forth his case in two propositions, which read as follows:

"I. The district court of Mayagüez erred in deciding, in its judgment of the 19th of April, 1907, that the law and the facts are in

favor of the defendants, setting forth in his opinion that it has in no wise been shown that the essential allegation to the effect that the two and a half *cuerdas* of cane were planted by Macario Pagán with his own money; that it has not been shown that the same belonged exclusively to him; and that the preponderance of the evidence in this case is in favor of the defendants.

"II. Can the defendants Josefa Quiñones, Carlos Pagán and Vicente Zapata, who jointly answered without taking an appeal from the judgment rendered by the municipal court of San Germán, enjoy the benefits of the judgment rendered by the District Court of Mayagüez, by virtue of the appeal taken by Enrique Quiñones in his own name, and who was represented separately?"

In regard to the first proposition presented by the counsel for the appellant we find that the evidence produced on the trial was somewhat contradictory and not altogether satisfactory, but the preponderance of its weight was found by the trial judge to be in favor of the defendant. It appears from the record that the trial judge was justified in his estimate of the facts. Such being the case, and inasmuch as the facilities of the trial court for weighing the evidence are much better than this court possesses we feel constrained to leave that question to remain as determined in the court below. This is in accordance with the decisions of this court in numerous cases, among others that of the *American Raliroad Co.* v. *Valentín Román*, decided on the 29th of January, 1906. In these cases this court has followed the uniform current of American judicial precedents.

In regard to the second proposition presented by the appellant for the consideration of this court we find that although judgment was rendered in the municipal court in favor of the plaintiff against all four of the defendants, to wit, Josefa Quiñones, Carlos Pagán, Vicente Zapata and Enrique Quiñones, for $450, and costs, the latter alone appealed to the district court.

Inasmuch as the district court had to try the case anew and hear evidence, and construe pleadings, regardless of the action of the municipal court, although this jurisdiction was

appellate only and not original, still the whole case had to be tried over again by the district court, and it was determined on the facts alone, the judge finding that the plaintiff had failed to prove the essential allegations of his complaint; so the district court had before it the controversy not only between Macario Pagán and Enrique Quiñones, but the whole question of the plaintiff's claim against all of the defendants. It could therefore decide the issues made between Macario Pagán and the other three defendants, properly presented to its consideration on account of the fact that the case was, in its nature, indivisible, and the plaintiff's claims against all the defendants depended on the same testimony and had to be decided in the same judgment. The court therefore treated the case as an entirety and properly disposed of all the issues between the plaintiff and all the defendants.

In this view we are amply sustained by the ancient Spanish law as is shown by a few quotations from the great commentator Manresa and from that excellent code of laws known as *Las Partidas*. The former says:

"Although, as a general rule, the result of an appeal must be for the benefit or to the prejudice of the party by whom it was taken, yet our ancient legislation presents various cases in which a third party may benefit thereby, which always happens where the subject matter of the suit is indivisible." (Vol. 2, *Manresa, Ley de Enjuiciamiento Civil*, p. 169.)

The legislation to which the commentator refers is contained in the following citations:

"If it should happen that judgment were rendered in regard to something, either personal property or real estate, belonging to many in common; if any one of these should take an appeal from said judgment and prosecute the appeal in such a manner as to win the suit, said appeal would favor not only himself, but also his companions, in exactly the same manner as if all of them had taken the appeal and prosecuted the suit. But if said judgment were not reversed by way of an appeal, but because one of them was under age, and requested a new trial, then the favorable decision obtained by the latter would

not favor the others, and, therefore, the judgment against those who had taken the appeal would be conclusive.'' (*Ley* V, Tit. XXIII, *Partida* III.)

''We further say that, if in any suit brought by several parties, judgment were rendered against all of them, and they should not appeal from said judgment, with the exception of one of them; or if all appealed, and only one of them should prosecute the appeal in such a manner that judgment were rendered in his favor, and the first judgment reversed; of such a judgment as the aforesaid, all the others, who participated in the suit, may take advantage just as well as the one who prosecuted the appeal.'' (*Ley* XXI, Tit. XXII, *Partida* III.)

The same principles are enunciated by many American authorities, among others the following:

The Supreme Court of Texas, as long ago as 1849, in discussing a case where an appeal was taken by one alone of several defendants, through Chief Justice Hemphill, says:

''It appears to be the more convenient rule that where a judgment is entire, where the judgments are not distinct and independent, or where the parties have not distinct and independent interests, and where the judgment operates to the prejudice of all the defendants, a reversal as to one shall operate a reversal as to the whole; and this may be regarded as the general rule, subject to such modifications as may meet the justice of the case under review, and which may be in harmony with our system of procedure, or with the rules of practice as recognized in either the common law or equity jurisdiction.'' (*Burleson* v. *Henderson*, 4 Tex., 53 and 54.)

Again this case is followed and this principle is approved by the Supreme Court of Texas, saying:

''Where several defendants, against whom judgment has been rendered on a joint and several promissory note, prosecute a writ of error, and one fails to join in the writ of error, a reversal as to either will operate as a reversal as to all.'' (*Wood* v. *Smith*, 11 Tex., 367; *Willie* v. *Thomas*, 22 Tex., 175; *Dickson* v. *Burke*, 28 Tex., 119.)

The same rule appears to hold in Illinois, *Moher* v..*McKenzie*, 60 Ill. App., 575; as well as in Virginia, *Purcell* v. *McCleary*, 10 Grat., 246; also in many other States of the Union.

Then our decision must be to affirm the judgment of th'e district court, rendered on the 19th of April, 1907, in all its parts. This we are very well satisfied to do, realizing that whatever irregularities may have occurred in the court below, if any, that substantial justice has been done.

*Affirmed.*

Chief Justice Quiñones and Justices Hernández, Figueras and Wolf concurred.