## PAGAN *v.* QUIÑONES ET. AL.

APELACIÓN procedente de la Corte de Distrito de Mayagüez.

No. 144.—Resuelto en diciembre 16, 1907.

APELACIÓN—PRUEBAS CONTRADICTORIAS—APRECIACIÓN DE LA CORTE INFERIOR.—En los casos de pruebas contradictorias la apreciación que de las mismas hubiere hecho la corte inferior debe ser aceptada por el tribunal de apelación, especialmente si aparece que tal apreciación está justificada por la preponderancia de la prueba practicada en el juicio.

ID.—EFECTO DE LA SENTENCIA CUANDO SEAN VARIOS LOS DEMANDADOS Y UNO SOLO APELARE—INDIVISIBILIDAD DE LA MATERIA LITIGIOSA.—Dictada sentencia por la corte municipal contra varios demandados, y apelada por uno solo de ellos, la corte debe proceder á celebrar el juicio *de novo*, y si la materia litigiosa fuere por su naturaleza indivisible, la corte debe considerar y resolver las cuestiones envueltas en el pleito en toda su integridad, y la sentencia que dictare habrá de afectar también á los demandados no apelantes.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Ramírez.*

Abogado del apelado: *Sr. Texidor.*

EL JUEZ ASOCIADO SR. MACLEARY, emitió la opinión del tribunal.

El presente caso se originó en la corte municipal de San Germán el día 5 de febrero de 1906.

Era una reclamación por daños y perjuicios ascendentes á $450 por la incautación de la caña de dos cuerdas y media de terreno situadas en Lajas, cuyo terreno el demandante Pagán dijo haber arrendado á Juan Cancio Ortíz. Las cañas fueron

cosechadas y vendidas á la Central Guánica, por virtud de un embargo decretado á favor de Enrique Quiñones contra su madre Josefa Quiñones, el hermano de ésta Carlos Pagán, y Vicente Zapata. Todas las personas mencionadas son demandados en este caso.

Todos los demandados fueron citados y contestaron la demanda; el demandado Enrique Quiñones, por medio de abogado, haciendo lo propio los otros tres demandados. Todos presentaron excepciones previas que fueron desestimadas por la corte municipal.

Todas las partes interpusieron recurso de apelación contra la resolución desestimando la excepción previa. Solamente Enrique Quiñones contestó la demanda en la corte municipal, formulando una negativa general.

Habiendo dejado de contestar la demanda los otros tres demandados, Josefa Quiñones, Carlos Pagán y Vicente Zapata, fueron declarados en rebeldía.

El día del juicio, 15 de abril de 1907, solamente comparecieron el demandante Macario Pagán y el demandado Enrique Quiñones. Se dictó sentencia contra todos los demandados mancomún y separadamente por la suma de cuatrocientos cincuenta dollars, ó sea la cantidad reclamada.

Contra esta sentencia sólo Enrique Quiñones interpuso apelación para ante la Corte de Distrito de Mayagüez. Los demás no hicieron nada con respecto al asunto.

La Corte de Distrito de Mayagüez señaló día para la vista de la excepción previa.

Comparecieron el demandante y demandado Enrique Quiñones, pero los demás demandados Josefa Quiñones, Carlos Pagán y Vicente Zapata no comparecieron y no estuvieron representados en ninguna forma ante la corte de distrito.

Las excepciones fueron desestimadas por la corte de distrito lo mismo que lo fueron por la corte municipal.

Luego se señaló día para la vista del caso en sus méritos. El demandante y demandado Enrique Quiñones volvieron á comparecer, no haciéndolo los demás demandados.

Entonces el demandante presentó su prueba en el juicio, que fué substancialmente la siguiente:

"Juan Cancio Ortiz, de cincuenta años de edad, agricultor y comerciante, vecino de Lajas, declaró, bajo juramento que conoce á Macario Pagán, que sabe posee dos cuerdas y media de cañas en el barrio de Palmarejo, constándole ese particular, porque esos terrenos se los tiene arrendados al testigo; que fué privado de la posesión de esas dos cuerdas y media de caña, habiendo sido éstas embargadas por Enrique Quiñones; que el valor de dichas dos cuerdas y media de cañas puede calcularse, incluyendo el retoño, en cien dollars por cuerda por cada cosecha; que no se puede estimar que ese producto sea neto ó bruto; que calcula de cien pesos á ciento veinte los gastos de cultivo, incluyendo todo; que el retoño tiene menos gastos y debe producir lo mismo; que esas dos cosechas pueden producir quinientos pesos, antes cuatrocientos y quinientos dollars; que los terrenos donde están sembradas las cañas pertenecen al testigo, en virtud de un contrato con pacto de retro entre él y Silvestre Pagán; que posteriormente no se ha vuelto á celebrar ningún nuevo contrato con Don Silvestre Pagán que anulara el contrato anterior; que es dueño y posee también el terreno, habiéndolo comprado á Pepe Acosta, creyendo que á un tal Delgado pertenecía antes de ser de Pepe Acosta; que la compra que hizo á Silvestre Pagán la inscribió en el registro de la propiedad después de vencido el contrato y no pagado; que dicho contrato tenía fecha de San Germán, abril, 1902.

"El testigo Delfín Lugo, que vive en el barrio de París, jurisdicción municipal de Lajas, declaró que conoce á Macario Pagán; que sabe que ese Sr. posee en ese barrio algunas siembras de cañas; que anteriormente conocía las fincas en que están sembradas esas cañas, como de Silvestre Pagán, pero que posteriormente supo de un negocio que tuvo lugar con Juan Cancio Ortíz; que lo vió sembrando caña y le dijo que ibá á sembrar dos ó tres cuerdas; que cuando estuvieron esas cañas de corte supo que Carlos Quiñones las estaba cortando como administrador, en virtud de un embargo practicado de las mismas por una demanda interpuesta por Enrique Quiñones, contra Josefa Quiñones, madre de Carlos; que cuando le embargaron las cañas á Macario Pagán, este le dijo, "me han embargado las cañas, vamos por allí para que me digas cuanto puede producir eso"; que fueron y vol-

tearon las cañas, y le dijo; que podía producir por lo menos cuatro-
cientos cincuenta á quinientos pesos; que sabe que esas cañas fueron
cortadas y las trasladaron para su elaboración á la Guánica Central;
que, según tiene entendido, fueron embargadas por José Martir; que
ha tenido ocasión de volver recientemente por casa de Macario y ha
visto que el retoño que dejara está cortado por completo; que Marcario
Pagán, no tan solamente perdió la caña que había, sino que, por virtud
del embargo, perdió el retoño; que no sabe si fueron embargados los re-
toños; que conocía á Silvestre Pagán; que éste estuvo en posesión de
esa finca hasta que murió; que no puede precisar cuando murió. Ade-
más, declaró el testigo que es agricultor; que no tiene conocimientos
muy profundos en materia de agricultura, pero que para tasar tres
ó cuatro cuerdas de caña los tiene.

"El testigo Enrique Schroder, de veinte y ocho años de edad,
casado, vecino de Palmarejo, jurisdicción de Lajas, declaró que conoce
á Macario Pagán, y sabe que posee alguna plantación de cañas en al-
guna finca; que sabe que estaban allí, pero que no sabe si serían bajo
el nombre de él ó de quien sería, debido á que allí presentaron una
tercería ó embargo, no sabe lo qué sería de las cañas que él plantó; que
ha visto las cañas que Macario Pagán tenía plantadas en ese terreno, y
ha visto los peones trabajando allí con él; que no ha practicado
ninguna tasación del importe de esas cañas; que es agricultor, pero que
no puede manifestar cuánto valdrán dos cuerdas y media de cañas, por-
que los pisos son diferentes y algunos ocasionan más gastos que otros;
que cuando vió esas cañas no estaban de corte, y que en una cuerda se
puede gastar cincuenta ó sesenta pesos; que no sabe si esas cañas fue-
rón cortadas.

"El testigo Juan Rodríguez, de treinta años de edad, agricultor,
residente del barrio de Llanos, jurisdicción de Lajas, declaró que
conoce á Macario Pagán hace bastante tiempo; que sabe que Don Ma-
cario Pagán posee algunas plantaciones de cañas en el barrio de Lajas,
como dos cuerdas y media, constándole esa circunstancia porque tra-
bajó en ellas; que sabe que Macario Pagán fué privado de esa siembra
porque se la embargaron el marshal de Cabo Rojo, no sabe por orden
de quién; que las cañas la cortó Don Carlos Pagán y las elaboraron
en la Guánica Central; que tuvo ocasión de ver esas cañas cuando ya
estaban próximamente en los días de corte, y por los resultados que
dieron otras en ese mismo cosecho, calcula que podrían dar de cua-
trocientos á quinientos pesos; que no sabe si Macario Pagán ha utili-
zado el retoño de esas cañas; que conocía á Silvestre Pagán, que
murió en esa casa; que no sabe decir si ese señor salió de ese terreno

y de la casa alguna vez; que le vió siempre allí donde murió; que el deponente vivía ahí dos ó tres años y lo vió siempre allí donde estuvo hasta que murió.''

El demandado Enrique Quiñones, presentó su prueba que substancialmente es como sigue:

''El testigo Juan Cancio Ortíz declaró que las contribuciones del terreno hasta el 30 de enero de 1904, en que murió Don Silvestre Pagán, las pagó el declarante.

''El testigo, Vicente Zapata, declaró que esas cañas de Silvestre Pagán, ó de la Sucesión, porque Don Silvestre hizo un pacto de retroventa á Don Juan Cancio Ortíz, por cantidad de seis cuerdas de terreno, mas después dió por dos años más, después dió otro predio de terreno compuesto de tres cuerdas y media y una casa para pagar esa retroventa, en pago de esa hipoteca, cuyo terreno que dió por el retroventa es una casa donde el testigo vive y el día que Don Silvestre Pagán vendió á Don Juan Cancio Ortíz esa casa, el declarante vivía; que cuando se hizo la entrega Don Juan le dijo: ''Vicente, te participo que he tomado esa finca por los mismos doscientos pesos,'' que eran dos años los de la hipoteca, y un año antes fué el pago, por cuyas circunstancias le sobraba un pico á Don Silvestre de esa finca, y entonces convinieron que el declarante desocupara la casa más tarde, y entonces Don Silvestre sembró cañas y Don Gregorio le suministró de su ventorrillo varias cosas, y le pagó Don Silvestre con un buey y un potro, por cuyas circunstancias pertenecen á Don Silvestre Pagán esas cañas. A preguntas del honorable juez de la corte, contestó que entiende lo mismo pacto de retro ó hipoteca, que no sabe qué es hipoteca; que las seis cuerdas y la casa donde vive el testigo pertenecía á Don Silvestre, también por compra á Don José Manuel Acosta; que Don Silvestre vendió ese terreno á Don Juan Cancio, constándole ese particular.

''El testigo Carlos Pagán, declaró que conoce como hecho que las cañas sembradas en ese terreno son de Don Silvestre, por causa que fueron sembradas con dinero, á más el terreno pertenecía, sino que pertenece á su padre; que su padre tenía un pacto de retro con Don Juan Cancio Ortiz, y que un año antes de vencerse el retro llamó á Acosta, que tenía otra finca que le había comprado hacía tiempo y no le había pasado escritura, y le dijo que en vez de pasarle la escritura á él se la pasara á Don Juan Cancio Ortíz, para pagarle el retro; que entonces convinieron ellos aceptar la escritura de Acosta directa-

mente, y convino pasar la escritura al padre del declarante, ó cancelar
el retro tan pronto como el padre del declarante lo necesitara; pero en
ese tiempo sucedió que murió el padre del testigo, y durante ese
tiempo después sembró las cuerdas de caña, y por eso, es que le
consta que esas cañas son de Don Silvestre Pagán; además, con el
dinero que se sembraron esas cañas fué con el del padre del declarante.

''El testigo Ramón Mercado declaró que Don Silvestre habló para
que le cortara unas semillas; que se las cortó y Silvestre le pagó con
un potro; que las semillas fueron cortadas para sembrar unas cañas
en unas seis cuerdas que tenía Don Silvestre, siendo esas seis cuerdas
las mismas que se litigan.

''El testigo Simplicio Arroyo declaró que en 1903 Don Silvestre
vino á su tienda y le dijo que si le despachaba unas provisiones para
unos peones que tenía trabajando en las cañas, y para el sustento de su
familia; que le contestó que le podía despachar por un mes, como lo
hizo, y al vencimiento de dicho término, que fué el testigo á la casa de
Silvestre, y éste le dió en pago un buey en $22, cuyo buey era para
que pagara la mitad y la otra mitad para dársela en dinero, para
pagar los trabajadores que tenía en la casa; que es seguro que en 1902
á 1903 él era comerciante; que tenía un establecimiento abierto en un
barrio de Lajas; que pagaba las contribuciones de 1903 para ade-
lante.''

El demandante presentó en este acto una certificación ex-
pedida por el alcalde de Lajas para probar que el testigo no
es veraz en su manifestación, pues en la certificación se hace
constar que dicho testigo no tenía ningún establecimiento
abierto de 1902 á 1904. El testigo manifiesta que Don Juan
Pujals era el dueño de la tienda, y que el testigo tenía veinte
dollars invertidos en la misma, y Pujals tenía diez, y que el
testigo intervino como socio comanditario.

En 19 de abril, la Corte de Distrito de Mayagüez dictó sen-
tencia en favor de todos los demandados, decretando que el
demandante no obtuviera nada de los demandados, y que éstos
fuesen libres de toda responsabilidad respecto á la demanda,
con las costas al demandante. La corte también dictó una
opinión, que á la letra dice así:

''La acción ejercitada en este pleito, es una acción personal en
cobro de dinero y se pide en dicha demanda que, previos los trámites

legales, juicio y prueba del caso, el tribunal se sirva dictar sentencia declarando que la ley y los hechos están en favor del demandante Macario Pagán y en contra del demandado, y por tanto, que éstos solidaria y mancomunadamente satisfagan á mi defendido Macario Pagán la suma de cuatrocientos cincuenta dollars, importe de las cañas cortadas y vendidas á la Guánica Central y del tocón ó retoño venidero, condenándoles, además, al pago de las costas, gastos, y suplementos que se hubieren originado.

"La alegación fundamental de la demanda, base de la reclamación interpuesta, es la siguiente: Macario Pagán sembró de su peculio propio y con el consentimiento de Don Juan Cancio Ortíz, dos cuerdas y media de caña de azúcar en una finca propiedad de dicho Sr. Ortíz, compuesta de seis cuerdas de terreno, equivalentes á dos hectáreas, 35 áreas, y 82 centiáreas, en las que se encuentra una casa habitación de maderas y tejas, radicada en el barrio de Llanos, término municipal de Lajas, lindante al saliente, con terrenos de Don Ernesto Forestier Ruíz; al norte, con el camino real que de Guánica conduce al Boquerón y al poniente y sud, con terrenos de Don José Martí y Rivera. La demanda no aparece jurada y él único demandado que compareció en el juicio, ó sea Enrique Quiñones, por conducto de su abogado Don Benito Forés, contestó la demanda, negando substancialmente todos los hechos opuestos á los formulados en la misma.

"La corte entiende, después de haber oído toda la prueba en el acto del juicio, la cual ha sido debidamente considerada y las alegaciones establecidas por los abogados de las partes litigantes, que no se ha justificado en manera alguna la alegación esencial consignada en el cuerpo de la demanda de que las dos y media cuerdas de cañas hayan sido sembradas por Macario Pagán con su peculio propio, ni habiéndose justificado tampoco que dichas cañas sean de su exclusiva pertenencia; entiende más; que la preponderancia de las pruebas están en este caso á favor de la parte demandada; por tanto, declara sin lugar la demanda y decreta y ordena que dicho demandante no obtenga ni recobre nada de los demandados, y que éstos vayan libres de toda responsabilidad, como consecuencia de la demanda interpuesta, con las costas á cargo de la parte demandante, y que se libre mandamiento al marshal para cumplimiento de esta sentencia.—Mayagüez, P. R , abril 19 de 1907.—(Firmado) Isidoro Soto Nussa, Juez.''

El abogado del apelante, en su alegato, hace la exposición de su caso en dos proposiciones, que á la letra dicen lo siguiente:

"I. Erró la Corte de Distrito de Mayagüez al resolver en su sentencia de 19 de abril de 1907 que la ley y los hechos están á favor de los demandados, consignando en su opinión que no se ha justificado en manera alguna la alegación esencial de que las dos y media cuerdas de cañas hayan sido sembradas por Macario Pagán con su peculio propio, ni justificado que las mismas sean de su exclusiva pertenencia, y que la preponderancia de las pruebas está en este caso á favor de la parte demandada.

"II. ¿Pueden los demandados Josefa Quiñones, Carlos Pagán y Vicente Zapata, que se unieron entre sí, bajo una misma representación sin interponer recurso de apelación de la sentencia dictada por la corte municipal de San Germán, gozar del beneficio de la pronunciada por la Corte de Distrito de Mayagüez, en virtud del recurso establecido por Enrique Quiñones á su solo nombre y el que venía representándose separadamente?"

Con respecto á la primera proposición presentada por el abogado del apelante, encontramos que la prueba aportada al juicio era contradictoria y nó del todo satisfactoria; que la mayor parte de la misma estaba á favor del demandado, según lo declaró el juez del inferior. Aparece del récord que el juez de la corte de distrito estuvo ampliamente justificado en su apreciación de los hechos. Siendo esto así, y por cuanto que los medios que tiene la corte inferior para aquilatar la prueba son mucho mejores que los de este tribunal, nos vemos obligados á dejar esa cuestión en la forma en que ha sido resuelta por la corte inferior. Esto está de acuerdo con las decisiones de este tribunal dictadas en numerosos casos, entre otros, en el de la *Compañía Americana de Ferrocarriles* v. *Valentín Román,* resuelto en 29 de enero de 1906. En estos casos, este tribunal ha seguido la uniforme corriente de precedentes judiciales Americanos.

En cuanto á la segunda proposición hecha por el apelante y presentada á la consideración de esta corte, vemos que,

apesar de haberse dictado sentencia en la corte municipal á favor del demandante y en contra de todos los demandados, á saber: Josefa Quiñones, Carlos Pagán, Vicente Zapata y Enrique Quiñones, por $450 y costas, solamente el último apeló para ante la corte de distrito.

Por cuanto la corte de distrito tuvo que celebrar nuevo juicio y oir la prueba é interpretar alegaciones, haciendo caso omiso de lo resuelto por la corte municipal; y aunque esta jurisdicción era solamente de apelación y nó original, sin embargo, todo el caso tuvo que oirse nuevamente en la corte de distrito; estando la resolución basada en los hechos solamente, resolviendo el juez que el demandante había dejado de probar las alegaciones esenciales de su demanda. De modo, que la corte de distrito tenía ante sí, no solamente la controversia entre Macario Pagán y Enrique Quiñones, sino también la cuestión referente á la reclamación de los demandantes contra todos los demandados. Podía, por tanto, resolver todas las cuestiones que surgieron en el litigio entre Macario Pagán y los otros tres demandados que fueron debidamente sometidas á su consideración, teniendo en cuenta que el caso era por su naturaleza indivisible, y las reclamaciones de los demandantes contra todos los demandados dependían de las mismas declaraciones y tenían que ser resueltas en la misma sentencia. Por lo tanto, la corte consideró el caso en su integridad y resolvió debidamente todas las cuestiones entre el demandante y los demandados.

Esta opinión está ampliamente sostenida por la antigua ley española, como lo demuestran algunas citas tomadas por el gran comentarista Manresa, y aquel excelente Código de Leyes conocido por "Las Partidas." El primero dice:

"Aunque por regla general el resultado que ofrezca la apelación sólo debe redundar en beneficio ó perjuicio del que la interpusiere, presenta nuestra antigua legislación varios casos en que puede aprovechar á un tercero, lo que sucederá siempre que la materia objeto del juicio sea indivisible."

Tomo 2 Manresa, Ley de Enjuiciamiento Civil, pag. 169.

La legislación á la cual hace referencia el comentarista está contenida en las siguientes citas:

"Acaesciendo que diesen sentencia sobre alguna cosa que fuese mueble ó raiz que pertenesciese á muchos comunalmente, si alguno de ellos se alzo de aquel juicio et siguio el alzada en manera que vencio, no tan solamente face pro a el, mas aun á sus compañeros, bien asi como si todos hobiesen tomado el alzada et seguido el pleyto. Mas si non fuese tal sentencia desatada por manera de alzada, mas porque era el uno dellos menor et que pidio restitucion, entonce non ternie pro a los otros el juicio que tal como este hobiese vencido; et por ende finca la sentencia firme contra aquellos que se alzaron."

Ley V, Tit. XXIII, Partida III.

"Otrosi decimos que quando sobre algunt pleyto que pertenesciese á muchos fuere dado juicio contra todos, et de aquel juicio non se alzasen, fueras el uno, o si se alzasen todos, et el uno tan solamente siguiese el alzada de manera que fuese dado el juicio por el et recado el primero; de tal sentencia como esta se pueden aprovechar todos los otros que habian parte en el pleyto también como aquel que siguio el alzada."

Ley XXI, Tit. XXII, Partida III.

Los mismos principios se han declarado por muchas autoridades Americanas, entre otras, las siguientes:

El Tribunal Supremo de Texas, por allá en el año 1849, al discutir un caso en que solamente uno de varios demandados interpuso recurso de apelación, por conducto del Juez Presidente Señor Hemphill, dice:

"Parece ser la regla más conveniente que cuando una sentencia es completa, cuando las sentencias no son distintas é independientes, ó cuando las partes no tienen intereses distintos é independientes, y cuando la sentencia perjudica los intereses de todos los demandados una revocación respecto á uno de ellos se aplicará á todos; y ésta puede considerarse como la regla general, siendo sujeta á las modificaciones necesarias para hacer justicia en el caso que se esté revisando, y que estén en harmonía con nuestro sistema de procedimiento, ó con las reglas de práctica reconocidas bien por el derecho común ó por la equidad."

*Burleson* v. *Henderson,* 4 Texas, 53 y 54.

Y vuelve la Corte Suprema de Texas á seguir este caso y aprueba este principio, diciendo lo siguiente:

"Cuando varios demandados contra los cuales se dicte sentencia, por virtud de un pagaré mancomún y solidario, interponen un recurso de apelación por quebrantamiento de forma ó infracción de ley, y uno de dichos demandados deja de participar en el recurso, la revocación á favor ó en contra de una de las partes, efectuará la revocavocación á favor ó en contra de todas."

*Wood* v. *Smith,* 11 Tex., 367.
*Willie* v. *Thomas,* 22 Tex., 175.
*Dickson* v. *Burke,* 28 Tex., 119.

Parece que la misma regla prevalece en Illinois: *Moher* v. *Mckenzie,* 60 Ill. App., 575; así como en Virginia; *Purcell* v. *McCleary,* 10 Grat., 246; y también en muchos de los demás Estados de la Unión.

Por consiguiente, nuestra decisión es que se confirme la sentencia dictada por la corte de distrito en 19 de abril de 1907 en todas sus partes. Estamos plenamente satisfechos de adoptar esta resolución, entendiendo que cualesquiera que hayan sido las irregularidades en la corte inferior, si alguna ha habido, se ha hecho cumplida justicia.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Quiñones y Asociados, Hernández, Figueras y Wolf.